IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 24-10807 |
| ARTEX TELECOMMUNICATIONS LLC, | § | |
| | § | Chapter 11, Subchapter V |
| Debtor. | § | |

**ADVANCE, ALO, BAYPOINT, FOREST, OVERTON, AND SLATE'S
OBJECTION TO CONFIRMATION OF
DEBTOR'S PLAN OF REORGANIZATION**

TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Advance Servicing, Inc. ("Advance"), Alo Advance ("Alo"), Baypoint Funding, LLC, ("Baypoint"), Forest Capital Group, LLC ("Forest"), Overton Funding, LLC ("Overton"), and Slate Advance ("Slate," and collectively with Advance, Baypoint, Forest, Alo, and Overton, the "Objectors") file this objection to *Debtor's Plan of Reorganization* (the "Plan")[1] filed by Artex Telecommunications LLC (the "Debtor"), and respectfully state as follows:

### INTRODUCTION

1. Each of the Objectors entered into agreements to purchase the future receivables of the Debtor pre-petition.[2] To secure its obligations, the Debtor also provided the Objectors with a security interest in all its accounts receivable and their proceeds. Each Objector also filed a UCC-1

---

[1] *See* ECF No. 53.

[2] True and correct copies of the agreements are attached to each Objector's proof of claim. *See* Proof of Claim No. 9 (Alo); Proof of Claim No. 10 (Forest); Proof of Claim No. 11 (Overton); Proof of Claim No. 12 (Advance); Proof of Claim No. 13 (Slate); Proof of Claim No. 14 (Baypoint).

1

financing statement with the Texas Secretary of State to put others on notice of their transactions with the Debtor.[3]

2. The Objectors object to the confirmation of Debtor's Plan on the basis of the Plan's failure to: (1) satisfy the Objectors' security interests; (2) contribute the Debtor's projected disposable income to the Plan; (3) disclose insiders employed by the reorganized debtor and their compensation; (4) comply with the U.S. Trustee's requirements for filing monthly operating reports; and (5) comply with this Court's orders.

## BACKGROUND

**I.   The Debtor's Relationship with the Objectors**

3. **Alo**. On December 2, 2024, the Debtor entered into a *Sale of Future Receipts Agreement* (the "Alo Contract") with Alo. Under the Alo Contract, Alo purchased 12% of the Debtor's future receipts, up to $112,000 for $80,000. As part of the Alo Contract, Alo obtained a security interest in the Debtor's accounts receivable to secure its rights under the Alo Contract. On December 9, 2024, Alo filed a UCC-1 financing statement with the Texas Secretary of State to put others on notice of its transaction with the Debtor. To date, the Debtor has a balance owed to Alo of $87,500 on account of the Alo Contract.

4. **Forest**. On December 19, 2024, the Debtor entered into a *Merchant Cash Advance Agreement* (the "Forest Contract") with Forest. Under the Forest Contract, Forest purchased 3.68% of the Debtor's future receipts, up to $133,604.50 for $95,500. As part of the Forest Contract, Forest obtained a security interest in the Debtor's accounts receivable to secure its rights under the Forest Contract. On December 28, 2023, Forest filed a UCC-1 financing statement with the Texas

---

[3] True and correct copies of the UCC-1 financing statements are attached to each Objector's proof of claim. *See* Proof of Claim No. 9 (Alo); Proof of Claim No. 10 (Forest); Proof of Claim No. 11 (Overton); Proof of Claim No. 12 (Advance); Proof of Claim No. 13 (Slate); Proof of Claim No. 14 (Baypoint).

2

Secretary of State, pursuant to an earlier transaction with the Debtor. To date, the Debtor has only remitted $3,301.66 to Forest on account of the Forest Contract, leaving a balance of $131,272.84.

5. **Baypoint**. On November 12, 2024, the Debtor entered into a *Purchase and Sale of Future Receivables Agreement* (the "Baypoint Contract") with Baypoint. Under the Baypoint Contract, Baypoint purchased 10% of the Debtor's future receipts, up to $112,425 for $75,000. As part of the Baypoint Contract, Baypoint obtained a security interest in the Debtor's accounts receivable to secure its rights under the Baypoint Contract. Baypoint filed a UCC-1 financing statement with the Texas Secretary of State in August 2024 pursuant to an earlier transaction with the Debtor. To date, the balance on the Baypoint Contract is $89,050.

6. **Slate**. On November 2, 2024, the Debtor entered into a *Standard Merchant Cash Advance Agreement* (the "Slate Contract") with Slate. Under the Slate Contract, Slate purchased 25% of the Debtor's future receipts, up to $155,100 for $110,000. As part of the Slate Contract, Slate obtained a security interest in the Debtor's accounts receivable to secure its rights under the Slate Contract. On January 2, 2025, Slate filed a UCC-1 financing statement with the Texas Secretary of State to put others on notice of its transaction with the Debtor. To date, the balance on the Slate Contract is $95,800.

7. **Advance**. On July 22, 2024, the Debtor entered into an *Agreement for the Purchase and Sale of Future Receipts* (the "First Advance Contract") with Advance. Under the First Advance Contract, Advance purchased 7% of the Debtor's future receipts, up to $224,850 for $150,000. As part of the First Advance Contract, Advance obtained a security interest in the Debtor's accounts receivable to secure its rights under the First Advance Contract. On July 29, 2024, Advance filed a UCC-1 financing statement with the Texas Secretary of State to put others on notice of its transaction with the Debtor. To date, the balance on the First Advance Contract is $87,475.

8. On September 9, 2024, the Debtor entered into another *Agreement for the Purchase and Sale of Future Receipts* (the "Second Advance Contract") with Advance. Under the Second Advance Contract, Advance purchased 9% of the Debtor's future receipts, up to $220,500 for $150,000. As part of the Second Advance Contract, Advance obtained a security interest in the Debtor's accounts receivable to secure its rights under the Second Advance Contract. To date, the balance on the Second Advance Contract is $105,500.

9. **Overton**. On November 12, 2024, the Debtor entered into the *Standard Merchant Cash Advance Agreement* (the "First Overton Contract") with Overton. Under the First Overton Contract, Overton purchased 9% of the Debtor's future receipts, up to $196,000 for $140,000. As part of the First Overton Contract, Overton obtained a security interest in the Debtor's accounts receivable to secure its rights under the First Overton Contract. On March 6, 2024, Overton filed a UCC-1 financing statement with the Texas Secretary of State, pursuant to an earlier transaction with the Debtor.

10. On December 11, 2024, the Debtor entered into another *Standard Merchant Cash Advance Agreement* (the "Second Overton Contract") with Overton. Under the Second Overton Contract, Overton purchased 9% of the Debtor's future receipts, up to $223,500 for $150,000. As part of the Second Overton Contract, Overton obtained a security interest in the Debtor's accounts receivable to secure its rights under the Second Overton Contract. To date, the balance owed to Overton is $313,420 on account of the First Overton Contract and the Second Overton Contract.

II. **The Bankruptcy**

11. The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in this Court on February 10, 2025 (the "Petition Date"). The Debtors'

4

schedules disclosed $25,000 in available cash and $65,000 in A/R,[4] while the Debtor's budget stated that the Debtor had $59,000 in available cash as of the Petition Date, would gross $220,000 over a 30-day period, and would net almost $24,000 over a 30-day period.

12. On March 10, 2025, the Court entered the *Agreed Order Authorizing Final Use of Cash Collateral* [ECF No. 38] (the "Agreed Order"). In the Agreed Order, the Debtor agreed to provide the Objectors with replacement liens and pay certain Objectors monthly adequate protection payments.[5] The Debtor has failed and refused to pay the adequate protection payments that came due in April and May.

13. Each of the Objectors filed secured proofs of claim that included the underlying contracts and UCC-1 financing statements. Collectively, the Objectors' claims total $910,017.84.

14. The Debtor has filed only one monthly operating report for February 2025. In the February operating report, which should reflect only 18 days of operations, the Debtor reported cash receipts of $195,610 and net cash flow of $8,622.[6]

15. The Debtor filed the Plan on May 12, 2025. In pertinent part, the Plan provides for three classes of secured claims—for the ad valorem taxing authorities, Balboa Capital Corp., and Ascentium Capital. The Objectors are treated as non-priority, unsecured claims in Class 3,

---

[4]  *See* ECF No. 1 at 5, 6; ECF No. 15 at 1, 2; ECF No. 44 at 1, 2.

[5]  The Agreed Order provides in pertinent part:

> Furthermore, the Debtor shall make payments on a monthly basis to the Secured Parties, beginning April 20, 2025, and continuing until the dismissal or conversion of this case or the confirmation of a plan of reorganization, of: 1) $712.50 to Advance Servicing, Inc.; 2) $437.50 to Alo Advance; 3) $237.50 to Baypoint Funding, LLC; 4) $595 to Forest; and 5) $595 to Slate. The Debtor's failure to make payment in full on April 20 shall not be a default under this provision; provided, however, the Debtor must make up any shortfall in its May 20 payment.

Agreed Order, at ¶8.

[6]  *See* ECF No. 46 at 2.

because, according to the Debtor, either no collateral exists to secure the secured claim and/or senior liens exceed the fair market value of the collateral securing the secured claims.[7]

16.     The Plan states the following with respect to Class 3:

Each holder of an Allowed Unsecured Claim in Class 3 shall be paid by Reorganized Debtor from an unsecured creditor pool, which pool shall be funded at the rate of $1,000.00 per month for the first two (2) quarters and $2,500.00 per month for the remaining eighteen (18) quarters. Payments from the unsecured creditor pool shall be paid quarterly, <u>for a period not to exceed five (5) years (20 quarterly payments)</u> and the first quarterly payment will be due on the twentieth (20th) day of the first full calendar month following the last day of the first quarter.

<u>Estimation of Amount</u>. Debtor estimates the aggregate of all Allowed Class 3 Claims is [sic] approximates $500,000.00 based upon Debtor's review of the Court's claim register, Debtor's bankruptcy schedules, and anticipated Claim objections.[8]

17.     In contradiction of itself, the Plan also states that the projected quarterly distributions to unsecured creditors will be $15,000 per quarter.[9] The Debtor's projections, which only cover the first 12 months of the Plan, also provide for $5,000 per month to the unsecured creditors.[10]

18.     The Debtor's projections state that the Debtor's gross revenues for the 12 months from July 2025 through May 2026 will be $505,000 (or about $42,000 a month, 20% of the $220,000 projected on the Petition Date) and that net income will be over $75,000 ($5,000 more than it projects to pay to its creditors).[11]

## OBJECTION

19.     The Plan is unconfirmable in its current state.

---

[7]  Plan at 10.

[8]  Id.

[9]  Id. at 2.

[10] See id. at 30-32.

[11] Id.

20. To be confirmed, the Plan must comply with all the requirements of 11 U.S.C. § 1129(a). 11 U.S.C. § 1191(a). If the Plan does not meet the requirements of 11 U.S.C. § 1129(a)(8) or (10), it can still be confirmed so long as the Plan provides secured claimants with the value of their collateral and provides unsecured claimants with all the projected disposable income of the Debtor. 11 U.S.C. § 1191(b), (c)(1), (c)(2).

21. **11 U.S.C. § 1191(c) – The Plan Is Not Fair and Equitable**

22. Firstly, the Plan is not fair and equitable because it does not provide secured claimants with the value of their collateral. As of the Petition Date, the Debtor self admittedly had somewhere between $90,000 and $125,000 in cash and A/R (i.e., property that the Objectors had an interest in).

23. The Agreed Order provides the Objectors replacement liens to the extent of their interests in the property used by the Debtor were diminished in value. As such, the Plan is required to pay the Objectors *at least* the present value of $90,000. 11 U.S.C. §§ 1129(b)(2)(A); 1191(c)(1) (making § 1129(b)(2)(A) applicable in subchapter V).

24. Despite this, the Plan provides the Objectors with no value on account of their secured claims. Accordingly, it is not fair and equitable as to the Objectors and cannot be confirmed. *See* 11 U.S.C. § 1191(b), (c).

25. Furthermore, the Plan is not fair and equitable because it does not provide unsecured claims holders with all the projected disposable income of the Debtor.

26. On the most fundamental level, the Debtor's projections show the Debtor will make $75,000 per year, but only proposes to pay claimants, at most, $39,180 per year.[12] As such, the

---

[12] This number is based off the Plan's stated treatment of unsecured claimants in Article IV. *See* Plan at 10. At other points, the Plan states that it will pay unsecured claimants $5,000 per month. *See id.* at 2, 30-32.

7

Plan is facially unfair and inequitable to the Objectors and cannot be confirmed. *See* 11 U.S.C. § 1191(b), (c).

27. The Objectors also question the validity of the Plan's projections. The information in the Plan regarding the Debtor's disposable income is either conflicting, incomplete, or missing altogether. As a preliminary matter, the Debtor only projects its performance for 12 months, even though the Plan provides for payments for 60 months.

28. There's also reason to question the Debtor's projections. The Debtor had gross revenues of over $200,000 a month in 2023, 2024, and the first two months of 2025.[13] Despite this, the Debtor's projections – without having provided the Court or parties in interest with any operating reports – show it will generate around 20% of its historic revenue. The Court cannot accept this self-serving statement as reflecting all the Debtor's revenue going forward.

29. Before any Plan can be confirmed, the Debtor must: 1) provide better projections; and 2) commit all its projected income, not just its income based on extremely deflated revenue projections, to its unsecured claimants.

30. **11 U.S.C. § 1129(a)(5).** The Plan also fails to disclose the identity of insiders employed or retained by the reorganized debtor and the nature of any compensation to such insiders, as required by 11 U.S.C. § 1129(a)(5)(B).

31. **11 U.S.C. § 1129(a)(2).** The Debtor is not in compliance with the requirement of filing monthly operating reports, as required by 11 U.S.C. § 1129(a)(2). *See* 11 U.S.C. § 1107(a) (incorporating, by reference to § 1106(a)(1), § 704(a)(8)). The Debtor has only filed one operating report for February.[14] The Debtor is delinquent in filing operating reports for March and April.

---

[13] *See* ECF No. 1 at 30; ECF No. 46.

[14] ECF No. 46.

These reports would assist the Court, the Objectors, and all other parties in interest in determining the feasibility of the Plan.

32. Additionally, the Debtor is not in compliance with this Court's orders. The Debtor has violated the Agreed Order, by failing to pay the required adequate protection payments to certain Objectors that came due in April and May.[15] The Debtor has also violated the *Order Granting Motion of Subchapter V Trustee for Post-Petition Security Deposit* [ECF No. 41], by failing to timely make payments to the Subchapter V Trustee.[16]

33. **11 U.S.C. § 1129(a)(3).** The Bankruptcy Code provides that a plan must be proposed in good faith to be confirmed. Considering all the circumstances here – the Plan's proposed stripping of the Objector's property interests, the Plan's self-serving projections and attempt to underpay creditors, the Debtor's failure to file MORs, the Debtor's willful disobedience of court orders, and the recent dismissal of an affiliate's chapter 11 case for failure to abide by UST requirements[17] – the Plan is not proposed in good faith.

WHEREFORE, Objectors respectfully requests the Court deny confirmation of the Plan and grant such other and further relief, in law or equity, as this Court deems just and proper considering the facts and circumstances of this case.

---

[15] *See* ECF No. 38.

[16] *See* ECF No. 49 at 1; ECF No. 59 (Order to Show Cause).

[17] *See* Case No. 25-40100, ECF Nos. 59, 71.

9

Dated: June 20, 2025

        */s/ Michelle V. Friery*
        Broocks 'Mack' Wilson
        Texas Bar No. 24102655
        Michelle V. Friery
        Texas Bar No. 24040934
        708 Main Street, 10th Floor
        Houston, Texas 77002
        Phone: 713-320-8690
        E-mail: mack@wilsonfriery.com
        E-mail: michelle@wilsonfriery.com

        Counsel for Advance Servicing, Inc., Baypoint Funding, LLC, Forest Capital Group, LLC, Alo Advance, Overton Funding, LLC, and Slate Advance

## **CERTIFICATE OF SERVICE**

I certify that on June 20, 2025, a copy of this objection was served upon all parties requesting notice by the Court's CM/ECF system.

        */s/ Michelle V. Friery*
        Michelle V. Friery